## Meason *versus* Kaine.

| | |
|---|---|
| 63 | 335 |
| 126 | 339 |
| 63 | 335, |
| 132 | 472 |
| 63 | 335 |
| 133 | 68 |
| 63 | 335 |
| 144 | 78 |
| 146 | 161 |
| 63 | 335 |
| 178 | 323 |
| 63 | 335 |
| 180 | 428 |
| 63 | 335 |
| f 210 | ³209 |
| 63 | 335 |
| 33 SC | ⁹227 |

1. Kaine, Cope and Meason agreed to buy land together; the articles with the vendee were by agreement in the name of Kaine and Cope, who paid all the purchase-money.   In a suit by Kaine against Meason to recover his proportion of the purchase-money, Cope was not a competent witness for Kaine.

2. Where a person is primâ facie liable on a contract, he cannot be a witness to prove that he was acting as agent.

3. When a partnership is limited to one transaction, assumpsit may be maintained by one of the parties against the other.

4. The contract was valid under the Pennsylvania Statute of Frauds, for the breach of which the defaulter would be liable in damages.

5. The two might recover from Meason for his refusal to pay his proportion of the purchase-money, the measure of damages being the difference between the price he had agreed to pay and the present market value of the land.

6. An equitable interest is an interest in land which is within the words and spirit of the Statute of Frauds.

7. The vendor under articles in this case was a trustee for the vendees, a verbal assignment or agreement to assign before the equitable interest was complete, was as much within the spirit of the statute as afterwards.

8. A vendor cannot maintain an action to recover the purchase-money on a verbal agreement of sale.

9. In an action on a verbal contract by the vendee against the vendor, the jury cannot give a conditional verdict to be released on the payment of the purchase-money.

10. One of the fundamental principles in bills for specific performance is that there must be mutuality of remedy.

11. Equity does not in general enforce contracts to enter into a partnership.

12. Land bought or improved by partnership funds is treated as partnership property between the parties.

November 17th 1869.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

[Meason *v.* Kaine.]

Error to the Court of Common Pleas of *Fayette county :* No. 32, to October and November Term 1869.

This was an action of assumpsit, brought to June Term 1867, by Daniel Kaine against Alfred E. Meason. It was for the recovery of the one-third, the defendant's proportion, of the purchase-money paid by the plaintiff for a farm which had been bought by the plaintiff, defendant and Eli Cope on joint account, the articles with the vendor by agreement between the three purchasers having been taken in the name of the plaintiff and Cope only : the object of the purchase was to resell the land on speculation.

On the trial, January 21st 1869, before Gilmore, P. J., the plaintiff offered Eli Cope as a witness.

He was objected to on the ground of interest, admitted by the court, and a bill of exceptions was sealed.

Cope testified that in December 1865 the defendant requested him to join him in the purchase of the "Shoaf farm;" the witness agreed to do so if the plaintiff would join with them in the purchase. The agreement was that it should be bought for the plaintiff, defendant and witness, each one-third. The article was to be in the name of the plaintiff and witness, because it was thought the defendant could make sale of the property better if his name was left out. The article was drawn by the defendant, signed by Shoaf, Kaine and witness, and witnessed by the defendant. He went to Philadelphia to sell the land, but was not successful.

The agreement for the purchase of the land was dated December 23d 1864, "between James Shoaf, of the first part, and Eli Cope and Daniel Kaine of the other part, witnesseth that the said James Shoaf doth by these presents sell to Eli Cope and Daniel Kaine the farm bought by said Shoaf from Felix Hempstead. * * Cope and Kaine agree to pay the amount paid by said Shoaf to said Hempstead back to said Shoaf, and also to assume said Shoaf's payment to said Hempstead, i. e. to pay the remainder back not already paid to Hempstead, according to article of agreement, between said Shoaf and said Hempstead. And also to pay $3000 to said Shoaf. Now the payment of the amount paid by said Shoaf to Hempstead is to be made on April 1st, A. D. 1864, to said Shoaf. Three thousand dollars also to be paid by said Cope and Kaine on the first day of April, or at any time thereafter, on the demand of said Shoaf. This three thousand dollars is a bonus paid by Cope and Kaine for Shoaf's bargain with Hempstead. Said Shoaf is to remain in possession of said farm until April 1st, A. D. 1866. Said Cope and Kaine are to have free ingress and egress to all the land at any time from the date hereof, for the purpose of boring for oil, salt or other minerals or for any purpose connected with the business of boring, digging, &c. Cope and Kaine agree not to disturb said Shoaf's crops more than is

[Meason v. Kaine.]

necessary. The deed is to be made directly to Cope and Kaine by Hempstead, according to article between James Shoaf and the said Felix Hempstead. Said Shoaf is to pay no rent for the farm from the first day of April, A. D. 1865 to A. D. 1866," &c.   *   *

"Witness our hands and seals of the said parties the day and year first above written.

|  |  |  |
|---|---|---|
|  | JAMES SHOAF. | [L. S.] |
| "Test: | ELI COPE. | [L. S.] |
| "A. E. MEASON. | D. KAINE. | [L. S.]" |

The plaintiff gave evidence that he had paid $3335.33 of the purchase-money.

The court (Gilmore, P. J.), after stating the substance of the evidence, charged, "if the evidence is relied upon by the jury, the plaintiff is entitled to recover the one-third of the money which he has proved he has paid, with interest on the said one-third, from the several times of payment," &c.

The verdict was for the plaintiff for $1251.90.

The defendant took a writ of error, and assigned for error the charge of the court and admitting Cope as a witness.

*Campbell & Willson,* for plaintiff in error.—The action should not have been for the purchase-money, but for damages for breach of contract: 2 Saunders' Pleadings & Ev., part 1, p. 532. This being a partnership, an action could not be maintained until a settlement of partnership accounts: Story on Partnership, §§ 219–221, 260. Under the Statute of Frauds the plaintiff cannot recover.

*C. E. Boyle,* for defendant in error.—The contract is not between vendor and vendee, but between vendees; there is therefore nothing on the ground of the Statute of Frauds to prevent the plaintiff's recovery: Stewart v. Brown, 2 S. & R. 461; Morey v. Herrick, 6 Harris 128; McKee v. Jones, 6 Barr 425; Rhine v. Robinson, 3 Casey 30; Beegle v. Wentz, 5 P. F. Smith 369; Black v. Moore, 1 Barr 344; Plumer v. Reed, 2 Wright 47; Reed v. Murray, 1 Jones 334; Finlay v. Stewart, 6 P. F. Smith 193. Cope had an interest in the question, but not in the case: 1 Greenl. Ev. § 389.

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—Kaine and Cope made a written contract with Shoaf for the purchase of a farm. It was alleged by the plaintiff below that there was a verbal agreement between himself, Cope and Meason, the defendant, by which this farm was to be bought on joint account, in the names of himself and Cope, and the profits realized on a resale to be equally divided. Kaine having made

13 P. F. SMITH—22

certain payments on account to Shoaf, brought this suit against Meason to recover contribution.

His principal, and perhaps only witness to prove this verbal contract was Eli Cope, the other party to the written articles with Shoaf. When offered for this purpose, he was objected to as incompetent, but admitted by the court. This constitutes the 3d error assigned, which we will consider first in order. If the effect of · a recovery by the plaintiff in this action would be to shift a part of his liability on the articles from himself to the defendant, he was clearly interested in the event of the trial. Primâ facie his liability to Kaine would be to contribute one-half. Should he be thereafter, sued by Kaine on such liability, the verdict and judgment in this case for the plaintiff would be evidence in his favor to prove that as between him and Kaine he was responsible only for one-third. Where a person is primâ facie liable on a contract he cannot be a witness to prove that he was acting as agent for the defendant, and thus throw the debt from his own shoulders on to another : Hickling *v.* Fitch, 1 Miles 208 ; Gilpin *v.* Howell, 5 Barr 52. In assumpsit for goods sold and delivered, there was evidence that the goods were sold to A., and it was proposed to call him as a witness to prove the case against the defendants, with whom it was alleged that he was in partnership, but it was held that he was incompetent on the ground that he was interested in procuring a verdict against the defendants, as in that case he would only be liable for a proportion of the debt: Ripley *v.* Thompson, 12 Moore 55. So in Purviance *v.* Dryden, 3 S. & R. 402, it was held on the same ground that a witness was incompetent who was offered by the plaintiff to prove that the witness had received the money for which the action was brought on account of a firm of which he and the defendant were partners. " He is primâ facie answerable for the whole," said Tilghman, C. J., " and if the plaintiff fails in this suit he must pay the whole. The effect of his evidence, then, is to take half of the burden off his own shoulders, and throw it on the defendants." To the same effect is Heckert *v.* Fegely, 6 W. & S. 139. We think there was error in the admission of the witness. This may not be very material, if he should live to another trial, as he will then undoubtedly be competent under the Act of April 15th 1869, Pamph. L. 30.

Assumpsit undoubtedly was the proper form of action. Assuming that there was a partnership between Kaine, Cope and Meason, it was limited to a single transaction, the purchase and sale of one particular farm or tract, and was not a general one in the purchase and sale of real estate. In such case assumpsit can be maintained : Brubaker *v.* Robinson, 3 Penna. R. 295 ; McFadden *v.* Erwin, 2 Whart. 37 ; Finlay *v.* Stewart, 6 P. F. Smith 183. This really seems to have been the only objection raised on the trial. The

[Meason v. Kaine.]

more difficult and embarrassing one, whether the alleged verbal contract between the parties can be enforced by a recovery against Meason of his proportionate share of the purchase-money, under the Statute of Frauds, was not brought to the notice of the learned judge. It fairly arises, however, under the exception to the charge of the court as set forth in the 1st assignment of error, and as the case goes back, it is our duty to consider it. The 2d assignment not being *sec. reg.* is to be treated as none.

No doubt this alleged verbal contract was a valid contract under our statute. An action might be maintained by the others against Meason to recover damages for his breach of it—his refusal to pay on demand his proportion of the purchase-money—in which action the measure of damages would be the difference between the price he had agreed to pay, and the present market value of one-third of the land: Bell *v.* Andrews, 4 Dall. 152; Ewing *v.* Tees, 1 Binn. 450; George *v.* Bartoner, 7 Watts 530; Ellet *v.* Paxson, 2 W. & S. 418; McDowell *v.* Oyer, 9 Harris 417. We ought also to lay out of view all the cases down to Murphy *v.* Hubert, 7 Barr 420, in which it was decided at last, though much I believe to the dissatisfaction of the profession, that a trust might be created in this state by a verbal agreement or admission of a grantee in an absolute deed, because the 7th section of the English statute, 29 Car. 2, c. 3, had not been re-enacted here. The 4th section of the Act of April 22d 1856, Pamph. L. 533, has now provided that all declarations or creations of trusts or confidences of land, and all grants and assignments thereof shall be manifested by writing signed by the party holding the title thereof. It would scarcely, I think, be pretended that if after the articles with Shoaf, Kaine and Cope had made a verbal agreement to convey an interest in their purchase to Meason it could have been specifically enforced either by or against him. It would be in the teeth of the Act of 1856. It has been uniformly held that an equitable interest is an interest in land which comes within the words and spirit of the Statute of Frauds; and therefore where a vendee was in possession under articles, the vendor, though having the legal title, cannot recover it back by proving a verbal contract to resell it to him on different terms: Goucher *v.* Martin, 9 Watts 106. How can it vary the case that the verbal contract was prior to or cotemporaneous with the articles? The vendor was a trustee for the vendees, and a verbal assignment or agreement to assign before their equitable interest was complete, was as much within the spirit and words of the act as afterwards. Such an agreement cannot be enforced any more than a verbal contract for the sale of the legal title. Contracts for the equitable stand now beyond a doubt upon the same footing as contracts for the legal interest. Nothing then is better settled than that the vendor cannot main-

tain an action on a verbal agreement of sale to recover the pur-
chase-money, for that would be practically to compel him to take
the land and thus specifically enforce the agreement: Ellet *v.*
Paxson, 2 W. & S. 418. Nor for the same reason in an action by
the vendee against the vendor can the jury give a conditional
verdict to be released on the execution and delivery of a deed:
Irvine *v.* Bull, 4 Watts 287.

Unless Meason could have recovered in an equitable ejectment
or by a bill in equity compelled a conveyance or assignment of
one-third of the equitable interest to him, it would manifestly be
unjust and inequitable to oblige him to pay for and take it. That
would be altogether a one-sided contract. Had the purchase
turned out an advantageous one, Kaine and Cope could have kept
it and set Meason at defiance. Equity is part of the law of Penn-
sylvania. One of the fundamental principles adopted by courts
of equity in bills for specific performance is that there must be
mutuality of remedy. Both parties must have a right to a decree;
otherwise it would follow that the court would decree a specific
performance when the party called upon to perform it might be in
this situation that if the agreement was disadvantageous to him
he would be liable to the performance, and yet if advantageous he
could not compel it: Bodine *v.* Glading, 9 Harris 50. Kaine and
Cope would be placed in a position to say to Meason: " Heads we
win, tails you lose." This is exactly the case here, if, as we have
seen, Meason could not have enforced the verbal agreement with
Kaine and Cope that he should have an interest of one-third in
the purchase. Shoaf certainly could not have compelled him
directly to pay the price, how then can he be compelled indirectly
in actions for contribution by Kaine and Cope? Had there been
any evidence by letter receipt or written acknowledgment the
Statute of Frauds would have been satisfied, but there was nothing
but oral testimony to show that he had any connection with the
transaction. We say nothing of the fact that there was no assign-
ment or declaration of trust tendered before or on the trial;
because the evidence of Meason's agreement that his name should
not appear might be considered as waiving that, and because there
can be no doubt that his payment of one-third of the purchase-
money, whether voluntarily or under the compulsion of a judg-
ment and execution, would raise a resulting trust in his favor.
Such a tender therefore would not have helped the case. Had
Kaine and Cope refused to recognise Meason's right to an interest
in the purchase, it would have been a simple breach of an unexe-
cuted parol contract for which he could maintain an action to
recover damages, the measure of which would have been the same
as in an action by them against him—the difference between the
price agreed, and the actual market value of his one-third of the

[Meason v. Kaine.]

land.   This puts both parties upon the just footing of equality and mutuality.

If we consider this agreement as constituting a partnership I do not think that the result will be different.   Equity does not as a general rule enforce contracts to enter into a partnership: Story on Partnership, § 189.   It seems to me clear that a chancellor would not compel in any case specific performance of a verbal contract to enter into a partnership to trade in lands.   No doubt land bought with or improved by partnership funds is treated as partnership stock between the parties.   There may exist as to the subject-matter in such a case all the rights and liabilities which attach to members of a firm in other cases, and among them no doubt the liability to account and to contribute to losses.   Further than this I do not understand any of the cases to have gone, at least in this state: McDermott v. Laurence, 7 S. & R. 438; Hale v. Henrie, 2 Watts 144; Brady v. Colhoun, 1 Penna. R. 140; Kramer v. Arthurs, 7 Barr 165; Coder v. Huling, 3 Casey 84; Lacy v. Hall, 1 Wright 360.   In Brubaker v. Robinson, 3 Penna. R. 295, no question was raised upon the Statute of Frauds, and that case was before the Act of 1856.   I do not pretend to say what the decision ought to have been upon the case presented upon this record before that act.   It has had a controlling influence on the conclusion at which I have arrived.   It will be seen from the course of reasoning that this judgment touches not the remedy but rather the pleadings.   Whether the action against Meason and Kaine for breach of contract should be joint or several we are not called upon to decide.   As all the parties are now competent witnesses it will make no difference in that respect, and it will be for the counsel of the plaintiffs to determine whether to discontinue this suit and bring a new action, or to amend the *narr.* by filing with the leave of the court an additional count in this.

Judgment reversed, and *venire facias de novo* awarded.

THOMPSON, C. J., dissented.